# In the United States Court of Federal Claims

No. 20-1462C
(Filed: June 23, 2021)
(Refiled as Amended: August 16, 2021)*
**NOT FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BYRON O. WOODS, SR., | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AMENDED OPINION AND ORDER

Byron O. Woods, Sr. — proceeding pro se — seeks review of a decision of the Board for Correction of Naval Records ("BCNR"), which denied him disability retirement and other forms of relief. *See* Compl. (ECF 1). The Government has moved to dismiss for lack of subject-matter jurisdiction or, in the alternative, for judgment on the administrative record. The motion is fully briefed and ripe for decision.[1]

For reasons described below, this Court lacks jurisdiction. Accordingly, the motion to dismiss is **GRANTED**.

## BACKGROUND

### I. The Disability Retirement Process

A military service member may receive disability retirement if the secretary of his branch finds that he is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," and also that:

> (1) based upon accepted medical principles, the disability is of a permanent nature and stable;

---

\* This Opinion and Order is being reissued to correct an error. The reasoning and judgment are unaffected.

[1] Def.'s Mot. to Dismiss and Mot. for J. on the Administrative R. (ECF 14); Pl.'s Resp. (ECF 16); Def.'s Reply (ECF 19).

>   (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
>
>   (3) [*inter alia*]—
>
>   …
>
>   (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination; and … —
>
>   …
>
>   (iv) the disability was incurred in line of duty after September 14, 1978.

10 U.S.C. § 1201(a)–(b) (2007); *see also* 10 U.S.C. § 101(a)(9).[2] The Department of Defense processes medical disability retirement through the disability evaluation system ("DES"). *See* DoDD 1332.18, DoDI 1332.38. According to instructions issued by the Department of Defense and the Secretary of the Navy, the first step of DES is referral to a medical evaluation board ("MEB"). DoDI 1332.38, E3.P1.1.1; SECNAVINST 1850.4E encl. 3, § 3102(a). This is followed, if necessary, by referral to a physical evaluation board ("PEB"). DoDI 1332.38, E3.P1.1.2; SECNAVINST 1850.4E encl. 3, § 3102(c). The PEB then makes a determination of disability on behalf of the Secretary of the Navy. SECNAVINST 1850.4E encl. 1, § 1004(a).

The Secretary of the Navy has provided that determinations of physical disability hinge on the member's fitness to perform his duties:

>   The sole standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay. Each case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating.

SECNAVINST 1850.4E, encl. 3, § 3301. The factors to consider include, but are not limited to, the risk of the medical condition to the member or other members, the requirements the condition may impose on the military, and the nature of the member's established duties for the remainder of his obligation. *Id.* § 3302(b). Members are, however, presumed fit. *Id.* § 3305.

---

[2] Other parts of the statute have been amended since Mr. Woods's discharge. *See* Defense Authorization Act for Fiscal Year 2009, Title VII, § 727(a), 122 Stat. 4510 (Oct. 14, 2008) (codified in relevant part at 10 U.S.C. § 1201). The parties do not appear to dispute that Mr. Woods's alleged disability was "incurred in line of duty after September 14, 1978" as that term has been interpreted by the Secretary of the Navy, *see* SECNAVINST encl. 3 § 4310(b), so the amendments are not germane to the case.

A member who believes he was erroneously denied disability retirement may petition the BCNR for correction of his military record. *See Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005). Members who are dissatisfied with the decision of the BCNR may obtain judicial review. *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991). But a court may only set aside a board decision that was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law," *i.e.*, "essentially the standard under which administrative agency decisions are reviewed." *Fisher v. United States*, 402 F.3d 1167, 1180 (Fed. Cir. 2005); *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) ("[J]udicial review of decisions of military correction boards is conducted under the APA.").

## II. Factual Background

### A. Mr. Woods's Service and Separation

Mr. Woods's first term of service with the Marines was from October 23, 1989 to July 26, 1993. AR 11, 388.[3] Mr. Woods re-enlisted just under a decade later on June 28, 2002. AR 11, 16. At all times relevant to this case, he was assigned to recruiting duty. AR 16.

On February 12, 2007, Mr. Woods was diagnosed with stage 3 chronic kidney disease ("CKD"). AR 139–40. Dr. Navin Jaipaul, the nephrologist who first diagnosed the CKD, advised Mr. Woods "that I would not recommend active combat duty given increased risk of … CKD progression in that setting." AR 140. He did not opine on Mr. Woods's fitness for recruiting duty or re-enlistment. During an April 2007 visit to the Navy Medical Clinic San Diego nephrology clinic, a second doctor, Shagun Chopra, stated he would "rec[ommend] against reenlistment given the progressive nature of [Mr. Woods's] chronic kidney disease." AR 189. A third doctor, William Blee, observed that month that Mr. Woods "is qualified to re-enlist, but not recommended," and that Mr. Woods "[w]ill have a physical evaluation for medical board." AR 192.

On May 1, 2007, Dr. Christine Cabrera at Mr. Woods's base medical clinic wrote that his nephrologist found him "not suitable for further duty" but did not initiate DES processing. AR 194–95. She referred him back to nephrology "ASAP," stating that a specialist was needed to refer a patient to DES. AR 197. She further questioned whether Mr. Woods was suited for limited duty, which is usually for members expected to recover, because Mr. Woods "is not expected [to] improve & will likely worsen." AR 197.

Two days after his meeting with Dr. Cabrera, Mr. Woods was given his separation physical by Lieutenant John Seyerle. AR 199. Several of Mr. Woods's separation physical documents described his CKD, *see* AR 199, 201, 204, and Lt. Seyerle's notes mention Mr. Woods's "[h]istory of blood & protein in urine." AR 203, 205. Lt. Seyerle nonetheless assessed Mr. Woods as qualified to discharge. AR 206. Mr. Woods began terminal leave on May 9, 2007, AR 209, and was separated on June 19 with a reentry code of RE-1A, meaning that he was considered eligible to re-enlist.

---

[3] AR refers to the administrative record (ECF 13).

AR 16; *see* Marine Corps Order P1040.31J, Enlisted Retention and Career Development Program (June 23, 2004)

Upon his separation, Mr. Woods appears to have signed an acknowledgement that he would not receive DES processing or disability retirement:

> You have been evaluated because of your planned separation or retirement from active duty service. You have been found physically qualified to separate or retire, which means that no medical condition has been noted that disqualifies you from the performance of your duties or warrants disability evaluation system processing. To receive disability benefits from the Department of the Navy, you must be unfit to perform the duties of your office, grade, or rating because of a disease or injury incurred or exacerbated while in receipt of base pay. Some conditions, while not considered disqualifying for separation or retirement, may entitle you to benefits from the Department of Veteran's Affairs. If you desire additional information regarding these benefits, contacts [*sic*] the Department of Veteran's Affairs at 1-800-827-1000 or view the web site at http://www.va.gov.

AR 207.[4]

Before Mr. Woods's separation. the Department of Veterans Affairs ("VA") assigned him a 30% disability rating for his kidney disease. AR 18. Mr. Woods requested an increase in his disability rating on May 9, 2007, the first day of his terminal leave, and was granted an increase to 50%. AR 18.

Late in his military service, Mr. Woods developed problems in performance and discipline. On March 1, 2007, his commanding officer initiated a non-judicial punishment against him for dereliction of duty. AR 60–61. Mr. Woods initially demanded a court martial but later changed his mind, accepting the non-judicial punishment and leaving it on his record. AR 60. His punishment was ultimately suspended, AR 60, but he received an adverse fitness report because of the non-judicial punishment, AR 130–34, and, for roughly three weeks, was in a "legal hold" pending court martial. AR 125.[5]

### B.  Administrative and Legal Proceedings

Mr. Woods first sought BCNR review in August 2018, seeking a change in his discharge status to reflect placement on the Permanent Disability Retirement List and to have his non-judicial punishment stricken from his record. AR 13. The BCNR granted Mr. Woods's second request, but denied disability retirement. AR 7. The

---

[4] The printed information identifying the signer is left blank, but the signature is similar to the signature on Mr. Woods's DD Form 2697. *Compare* AR 207 *with* AR 204.

[5] A service-member who demands a court martial submits to its jurisdiction "for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person's term of service[.]" MCM, Part II, R.C.M. 202(c)(1) (2005 Ed.). This jurisdiction, which may exceed a member's term of service is known as a "legal hold." *See Fuller v. United States*, 127 Fed. Cl. 640, 642 (2016).

BCNR obtained an advisory opinion determining that "insufficient evidence exists to merit relief":

> The Advisory Opinion opined that Petitioner's Stage 3 Chronic Kidney Disease was not a per se unfitting condition since it can be controlled through various treatments. So absent evidence that his kidney condition was the basis for his poor performance, there was insufficient evidence for a finding of unfitness for continued naval service. The advisory opinion stated there was no discernable nexus between Petitioner's kidney condition and his decline in performance and recommended he not be placed on the disability retirement list.

AR 7. The BCNR "substantially concurred" with the advisory opinion. AR 7. It found "insufficient evidence to support a finding that Mr. Woods's kidney disease prevented him from performing the duties of his office, grade, rank or rating." AR 7. Mr. Woods's Stage 3 chronic kidney disease "was treatable and stable at the time of his discharge" as shown by the stability of his condition over the next ten years. AR 7. The BCNR concluded that, with regard to Mr. Woods's medical record, no changes were required.

After receiving a belated response from Mr. Woods and opening another file, the BCNR denied Mr. Woods's disability retirement request a second time. AR 329–30. The BCNR repeated that his CKD was stable at the time of discharge and did not prevent Mr. Woods from performing his duties. The BCNR added that Mr. Woods completed a fitness test and was medically cleared for separation. AR 329–30.

Mr. Woods ultimately sued in this Court, seeking placement on the permanent disability retirement list, removal of an adverse fitness report from his record due to the BCNR's removal of his non-judicial punishment, and removal of the "legal hold" from his record. Compl. at 39. He also seeks a declaration that his commanding officer violated his constitutional rights by placing him in the legal hold. *Id.*

## DISCUSSION

Defendant has moved under RCFC 12(b)(1) and 12(b)(6) to dismiss Mr. Woods's claims. Def.'s Mot. at 1–2.[6] I agree that the case should be dismissed for lack of jurisdiction.

### A. Standard for Establishing Subject Matter Jurisdiction

A "court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002)). The Court is required to dismiss a case when subject-matter jurisdiction is lacking. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

---

[6] The parties agree — correctly — that Mr. Woods's challenge to his adverse fitness report is moot because the BCNR granted his requested relief. Def.'s Mot. at 38; Pl.'s Resp. at 15; *see* AR 7 (recommending that references to Mr. Woods's non-judicial punishment be expunged from his record).

The Tucker Act grants the Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not create a substantive right of action. *United States v. Testan*, 424 U.S. 392, 398 (1976). A party seeking to bring a suit in this Court must point to a money-mandating statute or regulation. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A party may seek certain equitable relief that is "incident of and collateral to" judgment on the money-mandating claim, including the "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records[.]" 28 U.S.C. § 1491(a)(2).

All claims before this Court are barred if filed six years after the claim first accrues. 28 U.S.C. § 2501. "[T]he special statute of limitations governing the Court of Federal Claims requires" that timeliness be considered a jurisdictional question. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008).

The burden of establishing jurisdictional facts, including timeliness, falls on the plaintiff. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Plaintiff must establish "subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citing *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969)). "[E]videntiary matters outside the pleadings" may be considered when determining if a court has subject matter jurisdiction. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985). "Although a pro se plaintiff's complaint is held to a less stringent standard than those prepared by counsel, … pro se litigants are not excused from meeting jurisdictional requirements." *Spengler v. United States*, 688 F. App'x 917, 920 (Fed. Cir. 2017) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

### B. The Court Lacks Jurisdiction over Mr. Woods's Disability Claim

For the Court to have jurisdiction, Mr. Woods must allege a claim under a money-mandating statute and show by a preponderance of the evidence that the claim accrued within the last six years. The first element is met, the second is not.

Title 10 U.S.C. § 1201 — governing military disability retirement — is a money-mandating statute. *Fisher*, 402 F.3d at 1174 (citing *Sawyer v. United States*, 930 F.2d 1577 (Fed. Cir. 1991)). Defendant characterizes Mr. Woods's claims as a non-justiciable challenge to the underlying fitness determination, but that is not accurate. It is true that the military's discretion to judge the fitness of its members "is not a judicial province." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *see also Rice v. United States*, 31 Fed. Cl. 156, 165–66 (1994), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). This Court *does*, however, review military decisions in cases otherwise within its jurisdiction when legal "tests and standards" apply. *See Rice*, 31 Fed. Cl. at 166 (quoting *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)

(itself quoting *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990) and *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988)). Here, where a former service member challenges the BCNR's application of standards for disability retirement, judicial review is available. *Krauss v. United States*, 40 Fed. Cl. 834, 839 (1998) ("It is well established that the legal sufficiency of a BCNR decision presents a justiciable issue, even if the challenged BCNR decision relates to a purely discretionary military decision like the fitness for duty of a servicemember."), *aff'd*, 185 F.3d 886 (Fed. Cir. 1999).[7]

Nonetheless, Mr. Woods's disability pay claim is nonjusticiable because it is untimely. Generally, "[t]he decision by the first statutorily authorized board that hears or refuses to hear the claim" begins the six-year statute of limitations countdown on a disability pay case. *Chambers*, 417 F.3d at 1224; *Friedman v. United States*, 310 F.2d 381, 396 (Ct. Cl. 1962); 28 U.S.C. § 2501. But there is an exception when "the veteran's knowledge of the existence and extent of his condition at the time of his discharge [is] sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." *Chambers*, 417 F.3d at 1226 (quoting *Real v. United States*, 906 F.2d 1557 1562 (Fed. Cir. 1990)). That exception applies when a court finds that a service member knew, "at the time of his separation" from the military, "that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected." *Chambers*, 417 F.3d at 1227; *see* 10 U.S.C. § 1201(a)–(b) (2007). When the exception applies, the statute of limitations begins running at the time of discharge.

The record is replete with evidence that, whatever disability Mr. Woods may have had, he was aware of it at the time of discharge. Mr. Woods was aware at the time of separation that he had a "permanent disability." *Chambers*, 417 F.3d at 1224; 10 U.S.C. § 1201(b)(1) (2007). There is no question that his CKD was accurately diagnosed — by multiple doctors — before separation. AR 139–40, 189. Several doctors informed him that his condition would likely worsen. AR 189, AR 197. In fact, he was told that he should not undertake combat duty or re-enlist because of his condition. AR 140, 189. Mr. Woods was also aware, as noted above, that his disability rating was at least 30 percent under the VA schedule. 10 U.S.C. § 1201(b)(3)(B); AR 17–18. There is no indication that his CKD was "a result of his intentional misconduct." *Chambers*, 417 F.3d at 1227; 10 U.S.C. § 1201(b)(2) (2007). Because his CKD arose during his military service after 1978, it also appears to be "service-

---

[7] That is consistent with ordinary administrative law principles. In the context of APA review, courts sometimes speak of a presumption of reviewability for final agency action with narrow exceptions where, for instance, there are no standards that would allow meaningful review of agency discretion. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (citing *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1652–53 (2015); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993); and 5 U.S.C. § 701(a)(2)). Courts likewise defer to agency decisions about certain questions over which agencies have discretion, but still must review for legal error and irrational decision making. *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 364 (1998).

connected" within the meaning of 10 U.S.C. § 1201(b)(3). *See Chambers*, 417 F.3d at 1227.

Two aspects of record assure me that the Court lacks jurisdiction. First, Mr. Woods's submissions to the BCNR show that he was not only aware of his disability in the days leading up to his separation, but in fact believed he was unfit for continued service.[8] There is no evidence in the record that he learned anything new about his condition that was not known to him in 2007. *See Chambers*, 417 F.3d at 1226–27. Second, at separation Mr. Woods signed a form acknowledging that he was found fit and would not receive disability retirement or DES processing. AR 207. That confirms that Mr. Woods in fact waived his rights at the time of separation — again, with full knowledge of his condition. *Chambers*, 417 F.3d at 1226.[9]

Given Mr. Woods's knowledge, his disability claim accrued at the time of discharge in June 2007, more than 13 years before he filed suit. *Chambers*, 417 F.3d at 1226; AR 16. Accordingly, the Court does not have jurisdiction over the claim.

### C. The Court Lacks Jurisdiction Over Mr. Woods's Legal Hold Claim

Defendant also moved to dismiss Mr. Woods's claim seeking removal of his "legal hold" status and a declaration that his legal hold violated his constitutional rights. That claim accrued in 2007, like his disability retirement claim, and is untimely for the same reason.

---

[8] *See* AR 38 ("Dr. JaiPaul's diagnosis of stage 3 chronic kidney disease answered the specific question of qualification and the question of me not being able to continue active combat service." (citation omitted)); AR 39 ("With that decision it meant I wasn't eligible for reenlistment, I wasn't medically clear, but most importantly I didn't meet the prerequisites for reenlistment." (citations omitted)); AR 44 ("I immediately brought up the physician from VA Loma Linda Healthcare System, specifically that the nephrologist was adamant about my medical condition and that reenlisting back into the Maines [*sic*] would be detrimental to my health."); AR 47 ("Once [Dr. Chopra] examined and reviewed my labs, he assessed, confirmed and agreed with the diagnosis of the nephrologist at VA Loma Linda Healthcare System that I was in stage 3 CKD and he too would recommend against reenlistment due to the progressive nature of the disease."); AR 49 ("In addition, they further explained due to the nature of my condition, it is not expected that I will improve and will likely worsen and that discussed my case with both case management & Linda@ med boards office."); AR 49–50 ("I explained to the medical officer that I was diagnosed with stage 3 CKD and was also told I was medically unfit for reenlistment and needed a current physical exam so it could be submitted along with the other documentation to initiate a PEB."); AR 51 ("It was quite evident that after my light duty period was up, I wasn't going to be allowed to return to regular duty from a medically unrestricted status, in fact, I couldn't reenlist because of the fact I was found medically unfit for continued service, which was the reason I was placed on light duty.").

[9] Because I hold that the Court lacks jurisdiction, I do not reach the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). Nonetheless, in light of Mr. Woods's own statements and those of his doctors, the only way he might have *lacked* sufficient "knowledge of the existence and extent of his condition" to trigger the statute of limitations "at the time of his discharge" is if he was not disabled in the first place. *See Chambers*, 417 F.3d at 1226. I have elected to take the record evidence at face value and dismiss on jurisdictional grounds, but either way, Mr. Woods cannot succeed.

In addition, the relief he seeks is outside this Court's jurisdiction, which is generally limited to money-mandating claims against the U.S. government. *Testan*, 424 U.S. at 398. Grants of equitable relief, such as "correction of applicable records," must be "an incident of and collateral to" a judgment for money damages. 28 U.S.C. § 1491(a)(2); *see Joslyn v. United States*, 110 Fed. Cl. 372, 386–87 (2013). Absent a claim for "actual, presently due money damages from the United States," a request that this Court correct a military record "is essentially equitable relief of a kind that the Court of Claims has held throughout its history … that it does not have the power to grant." *See United States v. King*, 395 U.S. 1, 3 (1969).

The Court may review the legitimacy of legal holds when relevant to determine a money-mandating claim. *See Fuller*, 127 Fed. Cl. at 645–46 (reviewing a legal hold that caused an abeyance in the plaintiff's retirement and thus effected retirement pay). But here, the hold had no effect on the underlying disability claim or Mr. Woods's compensation. Mr. Woods does not allege that he was unpaid while on hold, and his statutory right to basic pay has no exception for members on legal hold at the relevant time. 37 U.S.C. § 204 (2001). The Court lacks jurisdiction to consider this claim without a money-mandating foundation.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED**. The motion for judgment on the administrative record is **DENIED AS MOOT**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge